IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| APEX/FCC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 12-0507-WS-N |
| | ) | |
| FLEXICREW STAFFING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss (doc. 6).  The
Motion has been fully briefed and is now ripe for disposition.[1]  Plaintiff's Motion to File Sur-
Reply Brief (doc. 12) is **granted**, and the Court has considered that sur-reply for whatever
incremental value it may have, subject to the objections advanced by defendant.

I.      **Relevant Background.**

Plaintiff, Apex/FCC, LLC ("Apex"), initiated this action against defendant, FlexiCrew

Staffing, Inc. ("FlexiCrew"), in this District Court by filing a Complaint for Declaratory

Judgment (doc. 1) on August 14, 2012.  In its pleading, Apex alleged that FlexiCrew (a staffing

agency) had entered into a contract with non-party United States Environmental Services, LLC

("USES") in August 2010, under which FlexiCrew agreed to provide temporary workers to

USES.  Apex hired USES to remove rainwater from a barge at its facility on the Theodore

Industrial Canal in September 2011, in the aftermath of Tropical Storm Lee.  FlexiCrew provided

temporary labor to USES for this project pursuant to the August 2010 contract.  One of those

FlexiCrew employees, non-party Charles Brunson, purportedly sustained permanent bodily

injury because of exposure to dangerous chemicals at the Apex facility during that assignment.

Brunson filed a personal injury lawsuit (the "*Brunson* Lawsuit") against Apex and others in state

---

[1]      In addition to the parties' briefs on the Motion, the Court has received and
reviewed the Status Report (doc. 17) filed on October 26, 2012, as well as the back-and-forth
supplemental filings (docs. 18 & 19) submitted on October 29 and 30, respectively.

court in October 2011.  Apex brought a third-party complaint against FlexiCrew in the *Brunson* Lawsuit on May 14, 2012, asserting a claim for indemnity.

Rather than allowing this third-party complaint to run its course in the *Brunson* Lawsuit, Apex initiated a separate federal action against FlexiCrew in August 2012.  In this action, Apex requests a declaration that "Flexicrew has an obligation to indemnify and defend Apex in connection with the *Brunson* Lawsuit."  (Doc. 1, at 7.)[2]  Apex's position is that FlexiCrew is contractually obligated to furnish it with a defense and indemnification under the terms of FlexiCrew's August 2010 contract with USES.  Apex, which was not a party to the FlexiCrew/ USES contract, relies on the following contractual language: "To the full extent permitted by law, [FlexiCrew] agrees to defend, indemnify and save harmless contractor, owner and any other party which contractor is required to defend, indemnify and save harmless under any project related contract … from and against any claim … attributable to bodily injury … caused by, arising out of, resulting from, occurring in connection with or connected in any way to [FlexiCrew]'s work … whether or not caused … by the active or passive negligence or any other fault of a party indemnified hereunder provided, however, [FlexiCrew]'s duty hereunder shall not arise if such injury … is caused by the sole negligence of a party indemnified hereunder." (Doc. 1, at ¶ 14.)  Apex argues that it is an "owner" for purposes of this provision, and that FlexiCrew owes it a defense and indemnity in the *Brunson* Lawsuit.

Following service of process, FlexiCrew filed a Motion to Dismiss this declaratory judgment action.  That Motion centered on FlexiCrew's contention that this Court should exercise its discretion to decline jurisdiction pursuant to the principles set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005).  In particular, FlexiCrew argued that the *Brunson* Lawsuit pending in state court is parallel to this action, and that *Ameritas* counsels in favor of abstention here to promote the values of federalism, comity and efficiency, by allowing the state court to adjudicate these issues without federal intermeddling.

Although the *Ameritas* issue was briefed in some detail, the parties now agree that recent developments have mooted that stated ground for the Motion to Dismiss.  In particular, last week

---

[2]     Apex properly alleges that federal subject-matter jurisdiction is conferred by 28 U.S.C. § 1332, inasmuch as there is complete diversity of citizenship between Apex and FlexiCrew and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  (Doc. 1, ¶ 3.)

Brunson filed a motion to voluntarily dismiss the *Brunson* Lawsuit in state court, and the state court promptly granted such motion.  (Doc. 17, at ¶¶ 1-2.)[3]  As there is no longer a *Brunson* Lawsuit in state court to which this Court can defer under *Ameritas*, dismissal of this action is not warranted on an *Ameritas* theory.[4]

Nonetheless, FlexiCrew did not confine its Motion to Dismiss to the *Ameritas* issue, but also claimed a right to dismissal for two other reasons, to-wit: (i) any determination of FlexiCrew's duty to indemnify Apex at this time would be premature; and (ii) Apex lacks standing to litigate the USES contract, to which it was not a party.  (Doc. 7, at 12-14.)  The Court agrees that these arguments remain in play, notwithstanding the recent dismissal of the state-court action and the re-filing of Brunson's personal injury claims in federal court.[5]  Therefore, the Court now turns its attention to these surviving aspects of the Motion to Dismiss.

## II.   Analysis.

### A.   *Whether the Indemnity Claim is Premature.*

As discussed *supra*, Apex seeks a declaration that FlexiCrew owes it a defense to Brunson's personal injury claims, and that FlexiCrew also must indemnify it for any liability Apex may ultimately be found to have to Brunson.  With respect to the indemnity portion of that

---

[3]   To be clear, Brunson is not abandoning his personal injury claims against Apex, so as to moot this entire controversy between Apex and FlexiCrew.  Rather, Brunson voluntarily dismissed his state-court lawsuit, then immediately re-asserted those same claims against Apex in a previously-filed limitation of liability action pending before District Judge DuBose in this District Court, styled *In re Nature's Way Marine, LLC*, Case No. 1:12-cv-00390-KD-N.  (Doc. 17, ¶ 3.)  So Brunson continues to assert his claims against Apex, but he now does so in federal court, rather than state court, such that the *Ameritas* policy concerns about federalism and comity are no longer in play.

[4]   Supplemental filings in recent days confirm that both sides concur, at least with respect to disposition of the *Ameritas* argument.  Plaintiff writes that, based on the dismissal of the *Brunson* Lawsuit, "there are no longer any pending, related state court proceedings" and the "Motion to Dismiss should be denied."  (Doc. 17, ¶ 4.)  Defendant indicates that "[b]ecause the State Court Action has been dismissed, FlexiCrew's motion to dismiss the Declaratory Judgment Action filed by Apex in this Court is moot, to the extent FlexiCrew's motion was based on the application of the principles set out in *Ameritas* …."  (Doc. 18, ¶ 2.)

[5]   The parties' latest submissions make plain that they continue to dispute whether FlexiCrew is entitled to dismissal on grounds that the indemnity claim is premature or that Apex lacks standing to enforce the USES contract against FlexiCrew.  (*See* doc. 18, ¶¶ 3-4; doc. 19, at 2.)

claim, FlexiCrew invokes the well-worn proposition that duty-to-indemnify claims are generally deemed premature until such time as the underlying claims have been resolved. *See, e.g., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. King*, 2012 WL 280656, *5 (S.D. Ala. Jan. 30, 2012) ("Case law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.") (collecting cases).[6]  FlexiCrew contends that this principle requires dismissal of the duty-to-indemnify portion of plaintiff's Complaint for Declaratory Judgment, because there has been no final disposition of Brunson's personal injury claims against Apex. Unless and until Apex is found liable to Brunson, it would be inefficient in the extreme to expend resources litigating the hypothetical question of whether FlexiCrew must indemnify Apex if that uncertain contingency comes to pass.

        The Court agrees with FlexiCrew that the duty-to-indemnify issue is not ripe at this time. In a case like this, however, it would be inefficient and wasteful to dismiss the duty-to-indemnify claim outright.  After all, Apex also has a duty-to-defend claim against FlexiCrew, through which Apex is seeking a declaration that FlexiCrew is contractually obligated to furnish Apex a defense right now against Brunson's claims.  The duty-to-defend claim is drawn from precisely the same contractual language as the duty-to-indemnify claim.  If this Court were to find that FlexiCrew owes no duty to defend Apex against Brunson's claims, then that determination may conclusively defeat Apex's argument that FlexiCrew owes a duty to indemnify Apex against any liability it may be held to have towards Brunson.  Thus, deciding the duty-to-defend issue may automatically resolve the duty to indemnify.  In light of that possibility, it is more efficient to retain but stay the duty-to-indemnify portion of this declaratory judgment action than to dismiss it altogether.  *See, e.g., King*, 2012 WL 280656, at *5 ("[A] determination that there is no duty to defend may well determine the duty to indemnify issue.  Both discretion and common sense mandate that the court retain jurisdiction at least until the duty to defend issue is determined….")

---

        [6]        *See also Continental Cas. Co. v. HomeCorp Management, Inc.*, 2012 WL 1067974, *4 (M.D. Ala. Mar. 29, 2012) ("courts have declined to exercise their discretion under the Declaratory Judgment Act to decide questions about the duty to indemnify when the underlying action is pending."); *Northern Assur. Co. of America v. Custom Docks by Seamaster, Inc.*, 2011 WL 117046, *2 (M.D. Fla. Jan. 13, 2011) ("Because an insurer's duty to indemnify is dependent on the outcome of a case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.") (citation omitted).

(citations omitted); *Northern Assur. Co. of America v. Custom Docks by Seamaster, Inc.*, 2011 WL 117046, *2 (M.D. Fla. Jan. 13, 2011) (abating rather than dismissing request for declaration as to indemnity obligations, and recognizing that if court were to find that plaintiff had no duty to defend defendant, then that determination would likewise be dispositive of the duty to indemnify).

Simply put, "retaining jurisdiction over the duty-to-indemnify issue at least until the resolution of the duty-to-defend issue is both sensible and appropriate, rather than requiring [Apex] to file a new lawsuit even though the duty-to-defend ruling in this case may well be dispositive of the duty to indemnify, as well." *King*, 2012 WL 280656, at *5 n.6. Accordingly, the Motion to Dismiss is **denied** insofar as it is predicated on a theory of prematurity or lack of ripeness; however, the duty-to-indemnify portion of the Complaint for Declaratory Judgment is **stayed** until the earlier of (i) a final determination of the duty-to-defend issue herein; or (ii) a determination (or other resolution) in the underlying action of whether Apex is liable to Brunson.

### B.        *Whether Apex Lacks Standing.*

As an alternative basis for its Motion to Dismiss, FlexiCrew argues that "[a]s a purported third-party beneficiary, Apex does not have standing to seek a declaration regarding FlexiCrew's obligation to defend and indemnify USES." (Doc. 7, at 13.)[7] This is an incorrect statement of law. Under appropriate circumstances, third-party beneficiaries do indeed have standing to litigate contracts. *See, e.g., Brunswick Cellulose, Inc. v. Rogers Cartage Co.*, 2010 WL 438357, *2 (11th Cir. Feb. 8, 2010) ("A third party beneficiary may enforce a contract if its terms indicate that the contract was intended for his or her benefit."). "The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." *AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007). "Alabama law is clear to the effect that one for whose benefit a valid contract has been made, although that person is not a party thereto and does not furnish any consideration therefor, may maintain an action on the contract against the promissor." *Vesta Fire Ins. Corp. v. Milam & Co. Const., Inc.*, 901 So.2d 84, 103 (Ala. 2004) (citation omitted). Inasmuch as FlexiCrew's Motion to Dismiss is predicated on its inaccurate position that third-party

---

[7]        FlexiCrew reiterates its position in the reply brief, stating that "a third-party beneficiary does not have standing to seek a declaration regarding a contract to which it is not a party." (Doc. 11, at 15.)

beneficiaries categorically lack standing to litigate contract enforcement issues, the Motion is **denied**.

In its reply brief, FlexiCrew for the first time unveils a different argument (not found in its principal brief) that the Motion to Dismiss should be granted because "there is no set of facts pursuant to which Apex could have been an intended beneficiary to the contract." (Doc. 11, at 15.)[8]  This contention fails for two independent reasons.  First, as a new argument raised for the first time in a reply brief, it is improper.  *See, e.g., Continental Motors, Inc. v. Jewell Aircraft, Inc.*, --- F. Supp.2d ----, 2012 WL 3113136, *12 n.26 (S.D. Ala. July 31, 2012) ("This is a new, previously available argument which a movant cannot properly raise for the first time in a reply brief."); *Essex Ins. Co. v. Foley*, 827 F. Supp.2d 1326, 1330 (S.D. Ala. 2011) ("Essex's election not to advance in its principal brief readily available [legal] arguments … precludes it from propounding those contentions in its Reply.").  Second, FlexiCrew has made no pretense of developing this argument by identifying applicable Alabama authorities delineating when a non-party may properly be classified as a third-party beneficiary, much less applying those precedents to the well-pleaded factual allegations of the Complaint.  This Court cannot and will not formulate such arguments and perform movant's research for it.  *See, e.g., M.R. v. Board of School Com'rs of Mobile County*, 2012 WL 3778283, *4 n.5 (S.D. Ala. Aug. 30, 2012) ("Federal courts do not develop parties' legal arguments for them."); *Minemyer v. B-Roc Representatives, Inc.*, 695 F. Supp.2d 797, 809 (N.D. Ill. 2009) ("[T]his is an adversarial system.  It is not a court's task to research legal arguments on a party's behalf …."); *York v. Day Transfer Co.*, 525 F. Supp.2d 289, 301 n.10 (D.R.I. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted).[9]

---

[8]      This assertion is in stark contrast to FlexiCrew's principal brief, wherein defendant assumed (without conceding) that Apex was a third-party beneficiary, to-wit: "Apex is, at most, a third-party beneficiary of the contract between FlexiCrew and USES." (Doc. 7, at 13.)  Defendant's clear approach in its Motion and principal brief was to argue that, accepting Apex's status as a "purported third-party beneficiary," standing is nonetheless lacking.  In its reply, however, defendant shifted gears to argue for the first time that the Motion to Dismiss should be granted because Apex is not a third-party beneficiary at all.

[9]      To elaborate, Alabama law is clear that "in order for a person to be a third-party beneficiary of a contract, the contracting parties must have intended to bestow benefits on third parties."  *Edwards v. Costner*, 979 So.2d 757, 763 (Ala. 2007) (citation omitted).  While (Continued)

-6-

**III.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Defendant's Motion to Dismiss (doc. 6) is **moot** as to the *Ameritas* issue, and is **denied** in all other respects;

2.      Plaintiff's duty-to-indemnify claim is **stayed** until the earlier occurrence of (i) the resolution of the duty-to-defend issue, or (ii) the resolution of Brunson's underlying claims against Apex; and

3.      The Court takes judicial notice that this action is at least partially redundant of another lawsuit pending in this District Court.  On October 30, 2012, Apex filed an Amended Cross-Claim against FlexiCrew in the limitation of liability action styled *In re Nature's Way Marine, LLC*, Civil Action No. 12-0390-KD-N.  In that cross-claim, Apex cites the same contractual provision at issue in this declaratory judgment action and "demands express indemnity, implied indemnity, and/or contribution from Flexicrew for any and all amounts which Apex may be found liable to pay to Brunson, plus interest, costs, and attorney's fees."  (Civil No. 12-0390-KD-N, doc. 53, ¶ 21.)  Given the obvious inefficiency and risks of inconsistency in having the same contractual provision adjudicated as to the same litigants by two different federal judges in two different cases, the parties are **ordered**, on or before **November 8, 2012**, to **show cause** (if any exists) why these two actions should not be consolidated for all purposes, including trial, pursuant to Rule 42(a), Fed.R.Civ.P.

DONE and ORDERED this 1st day of November, 2012.

s/ WILLIAM H. STEELE_____
CHIEF UNITED STATES DISTRICT JUDGE

_____

defendant's position is apparently that this principle requires the contracting parties specifically to have intended at the time of contracting to bestow a benefit on this particular, identifiable, named third party (rather than a broader classification of third parties, such as a generic group of "owners" with whom USES might enter into contracting relationships in the future), it cites no Alabama law for this proposition.  If movant believes this is the law, it must explain why, rather than expecting the Court to fill in the legal blanks on its behalf.